IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal No. 2023-44 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| GERMAN SALDANA-SANCHEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION and ORDER

This matter is before the Court on the defendant's objection to the admission of the government's Exhibit 3.   The government sought to admit the exhibit during a bench trial before the undersigned on November 30, 2023, and defendant objected based on hearsay and the confrontation clause.   The Court denied defendant's objection as to hearsay, and took the confrontation clause issue under advisement and requested supplemental briefing.   The parties timely filed their briefs on December 5, 2023.   [ECFs 39 & 40].

### I.      BACKGROUND

Defendant German Saldana-Sanchez is charged with illegal entry under 8 U.S.C. § 1325(a). He appeared at the Cyril E. King Airport on St. Thomas on June 20, 2023, and was referred for secondary inspection and interrogated by Customs and Border Protection ("CBP") Officer Estricia Viera.   At trial, Viera testified that she used an interpreter from the translation service "Lionbridge" to conduct the interview and take defendant's sworn statement.   Viera explained that she asked the questions in English, the interpreter repeated those questions to defendant in Spanish, defendant responded in Spanish, and the interpreter repeated those answers to Viera in

*United States v. Saldana-Sanchez*
Criminal No. 2023-44
Page 2

English.   Viera further testified that she documented defendant's answers on a Form I-877, also

known as a Record of Sworn Statement (government's Exhibit 3).   Viera and the interpreter

reviewed the form with defendant, and defendant initialed and signed it.   The interpreter did not

testify at trial.

## II.      LEGAL STANDARDS

The issue before the Court is whether Exhibit 3, a translation of defendant's statement, is

subject to the confrontation clause.   The Sixth Amendment guarantees that "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him."   U.S. Const. amend. VI.   The right to confrontation stems from the common law tradition

requiring the prosecution to present "live testimony in court subject to adversarial testing," and

extends to out-of-court statements introduced at trial.   *Crawford v. Washington*, 541 U.S. 36, 43,

50–51 (2004).   Under the Supreme Court's holding in *Crawford*, testimonial statements of

witnesses absent from trial are inadmissible unless the declarant is unavailable and the defendant

had a prior opportunity for cross-examination.   *Id.* at 53–54, 59.   Relevant to the instant case, the

Supreme Court has not determined whether the admission of a defendant's translated statements

without offering testimony by the translator herself violates the confrontation clause.   Lower

courts' resolution of this issue turns on two different but related inquiries: who is the declarant of

the translated statements, and whether the statements are testimonial in nature.[1]

One of the seminal cases on this issue was decided before *Crawford*.   In *United States v.*

*Nazemian*, 948 F.2d 522 (9th Cir. 1991), the defendant argued that the testimony of an agent as to

statements made by her was inadmissible hearsay and violated the confrontation clause because

the agent was unable to understand her statements directly and only heard them as translated by

---

[1] There is a circuit split on this issue and no authority from the Third Circuit.

*United States v. Saldana-Sanchez*
Criminal No. 2023-44
Page 3

an interpreter, who did not testify at trial.  *Id.* at 525.  *Nazemian* determined that before reaching

the confrontation clause issue, courts "must consider as a threshold matter whether the interpreter

or [the defendant] should be viewed as the declarant."  *Id.*[2]  The court reasoned that if a translated

statement is properly considered the defendant's own, then there is no confrontation clause issue

because the defendant "cannot claim that she was denied the opportunity to confront herself."  *Id.*

at 526.  The court further reasoned that if the defendant is the declarant, the statements "would

constitute admissions properly characterized as non-hearsay under Fed. R. Evid. 801(d)(2)(C) or

(D)."  *Id.*[3]

Drawing on agency-language conduit theory,[4] *Nazemian* instructed courts to "consider on

a case-by-case basis whether the translated statements fairly should be considered the statements

of the speaker."  948 F.2d at 527.  In conducting this analysis, courts should evaluate four factors:

(1) "which party supplied the interpreter," (2) "whether the interpreter had any motive to mislead

---

[2] The court noted that while most of the available authority considered the issue of extrajudicial statements through interpreters in terms of hearsay objections, "the threshold analysis as to whether the translated statements should be considered the original speaker's own is equally applicable to both [hearsay and confrontation clause] concerns."  948 F.2d at 526 n.5.

[3] The court in *Nazemian* ultimately found "it was not plainly erroneous for the district court to treat the interpreter as a mere language conduit or as [the defendant's] agent for purposes of conducting conversations with [the testifying] agent."  948 F.2d at 528.  And, because the defendant and translator "are therefore treated as identical for testimonial purposes," admitting the agent's testimony as to the defendant's translated statements did not create confrontation clause or hearsay problems.  *Id.*

[4] Under the agency or language conduit theory,

> the interpreter's statements are imputed to the declarant because the interpreter is considered to be an agent of the declarant, as the language barrier precludes the declarant from expressing herself for testimonial purposes.
> …
> When interpreters make an out-of-court statement on behalf of a declarant in another language, they are "viewed as an agent of the party for whom they interpret." The Federal Rules of Evidence "equate statements by agents and employees as admissions of a party him or herself."

Sarah Stevens, *Invisible Touch: Analyzing the Language Conduit Theory Through the Lens of Translation and Interpreting Principles*, 88 UMKC L. Rev. 771, 778 (2020).

or distort," (3) "the interpreter's qualifications and language skill," and (4) "whether actions taken subsequent to the conversation were consistent with the statements as translated." *Id.*[5, 6]   Other circuits have adopted this approach to determine whether an interpreter is merely acting as a language conduit for the defendant.  *See United States v. Martinez-Gaytan*, 213 F.3d 890, 892 (5th Cir. 2000) (finding that "except 'in unusual circumstances, an interpreter is no more than a language conduit and therefore his translation does not create an additional level of hearsay'" (citation omitted)); *United States v. Budha*, 495 F. App'x 452, 454 (5th Cir. 2012) (interpreters' "translations of the defendant's own statements are not hearsay and do not implicate defendant's

---

[5] As one district court has explained:

> [T]he rationale for the fourth prong of the *Nazemian* test is that where a translation is corroborated by the declarant's subsequent actions, the translation is more reliable.  Thus, where a translation concerns retrospective statements regarding past occurrences, whether the record contains external indicum of the statement's reliability is the relevant consideration under *Nazemian*.

*United States v. Santacruz*, 2010 WL 3491518, at *3 (E.D. Cal. Sept. 2, 2010), *aff'd*, 480 F. App'x 441 (9th Cir. 2012).

[6] The Ninth Circuit has reiterated that, following the Supreme Court's decision in *Crawford*, "*Nazemian* remains binding circuit precedent because it is not clearly irreconcilable with *Crawford* and its progeny." *United States v. Aifang Ye*, 808 F.3d 395, 401 (9th Cir. 2015) (citing *United States v. Orm Hieng*, 679 F.3d 1131, 1139 (9th Cir. 2012)). The court in *Orm Hieng* observed that *Crawford* and the cases following it "make it clear that, if a testimonial statement is introduced, the Sixth Amendment requires opportunity for confrontation of the person who made the statement." 679 F.3d at 1140.  However, "[t]hey do not address the question whether, when a speaker makes a statement through an interpreter, the Sixth Amendment requires the court to attribute the statement to the interpreter." *Id.*   The court reasoned:

> [W]hether the interpreter must be considered a declarant, rather than a language conduit, is a threshold inquiry, and [] confrontation concerns do not even arise if the statement may be fairly attributed directly to the speaker.  If a court were to hold that the statement must be attributed to the interpreter, it would, under *Crawford*, ask whether the statement, as applied to the interpreter, was testimonial.  If so, the statement could not be admitted without opportunity for confrontation of the interpreter.   But if the court determines that a statement may be fairly attributed directly to the original speaker, then the court would engage in the *Crawford* analysis only with respect to that original speaker.  Where, as here, that speaker is the defendant, the Sixth Amendment simply has no application because a defendant cannot complain that he was denied the opportunity to confront himself.

*Id.* (internal citation omitted).

confrontation rights"); *United States v. Vidacak*, 553 F.3d 344, 352 (4th Cir. 2009) (citing

*Martinez-Gaytan* and finding interpreter was a language conduit rather than a declarant).[7, 8]

"[T]hat the interpreter is provided by the government, in and of itself, is [not] dispositive of the

agency question." *Nazemian*, 948 F.2d at 527.[9]

The Eleventh Circuit takes the opposite approach.   In *United States v. Charles*, 722 F.3d

1319 (11th Cir. 2013), the defendant appealed her conviction for knowingly using a false travel

document.   The defendant argued that the only evidence to support the charge was the third-party

testimony of a CBP officer as to the out of court statements made by an interpreter who translated

the defendant's Creole statements into English, and that the admission of the officer's testimony

as to what the translator said violated the confrontation clause.   *Id.* at 1321.   The court agreed,

finding "[a]s an initial matter, there is no debate that the statements of the interpreter as to what

[defendant] said are 'testimonial'" and thus subject to *Crawford*.   *Id.* at 1323.[10]   The court further

found that "for purposes of the Confrontation Clause, there are two sets of testimonial statements

---

[7] In *United States v. Shibin*, 722 F.3d 233, 248 (4th Cir. 2013), the Fourth Circuit cited its prior decision in *Vidacak* and found that "the absence in court of the interpreter did not render the [defendant's prior inconsistent] statements inadmissible as hearsay because the interpreter was not the declarant, but only a 'language conduit.'"   The court further rejected the defendant's challenge under *Crawford*, noting that *Crawford* "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."   *Id.* (quoting *Crawford*, 541 U.S. at 59 n.9).   Shibin's "statements were introduced as prior inconsistent statements[, and t]he interpreter was nothing more than a language conduit."   *Id.*; *see also State v. Mason*, 222 N.C. App. 223, 230 (2012) (finding that the right to confront a witness was not applicable because the testimony "was not admitted for the purpose of establishing the truth of the matter asserted, but rather . . . solely for the purpose of corroboration").

[8] Some district courts within the Third Circuit have applied *Nazemian* to consider challenges to admissibility of translated statements in civil cases.   *See, e.g.*, *Walsh v. Elder Res. Mgmt., Inc.*, 2022 WL 562810, at *1 (W.D. Pa. Feb. 23, 2022); *Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp.*, 2016 WL 1728381, at *7 (M.D. Pa. Apr. 29, 2016).

[9] *See also United States v. Da Silva*, 725 F.2d 828, 832 (2d Cir. 1983) ("Circumstances tending to negate an inference of agency would include the existence of a substantial possibility that the interpreter sought to shift suspicion to the accused . . . , or demonstrated incompetence on the part of the translator").

[10] The *Charles* court emphasized that the statements were elicited during an interrogation, and were offered to prove the truth of the matters asserted.   722 F.3d at 1323.

that were made out-of-court by two different declarants." *Id.* at 1324. The defendant was the declarant of her Creole language statements to the interpreter, and the interpreter was the declarant of the translated statements to the CBP officer. *Id.* The defendant therefore had the right to confront the declarant—the interpreter—about the statements to which the CBP officer testified in court. *Id.* at 1323.[11] Thus, under *Charles*, where the interpreter's statements are testimonial under *Crawford*, the testimonial statement is inadmissible unless the interpreter appears in court or the defendant had a prior opportunity for cross-examination.[12]

## III.   DISCUSSION

This Court agrees with the majority of courts that continue to follow the Ninth Circuit's approach in *Nazemian* and apply language conduit theory to determine whether a defendant is properly considered to be the declarant of his out-of-court translated statements such that the confrontation clause is inapplicable.

As an initial matter, the Court appreciates the lengthy discussion in defendant's brief on the complex and imperfect science of language interpretation. But concerns about the opportunity for error leading to distorted messages and altered meanings are largely absent in matters such as the present case. While it is true that there may be nuances in the translation of statements, the

---

[11] While Judge Stanley Marcus concurred with the majority's judgment, he opined "it unnecessary to decide a novel and difficult question of constitutional law in an area where the Supreme Court's jurisprudence is still evolving," and observed that neither "Supreme Court [n]or Eleventh Circuit precedent addresses the question of who the declarant of an interpreted statements is . . . for purposes of post-*Crawford* Confrontation Clause analysis." 722 F.3d at 1332–33 (Marcus, J., concurring). Judge Marcus further questioned the majority's finding that "*Crawford* wholly severed the link between Confrontation Clause analysis and the rules of evidence or reliability," noting "the Supreme Court's subsequent cases have suggested that those considerations may remain relevant, at least in the context of determining whether statements are testimonial." *Id.* at 1334–35.

[12] The *Charles* court ultimately affirmed the defendant's conviction because, in the absence of binding precedent (prior to the court's decision in *Charles*) stating that "the declarant of the statements testified to by the CBP officer is the language interpreter," the court was unable to find that admitting the CBP officer's testimony was plain error. 722 F.3d at 1331–32.

*United States v. Saldana-Sanchez*
Criminal No. 2023-44
Page 7

questions involved here are straightforward and not the kind that are susceptible to much

interpretation.   For example, where were you born and where did you enter the United States.

*See United States v. Romo-Chavez*, 681 F.3d 955, 960 (9th Cir. 2012) (affirming district court's

finding that officer was competent to translate defendant's answers about "where he was going,

where he lived . . . those sorts of questions.   It's not very high level Spanish.").[13]   The federal

courts use interpreters to ask and relay answers to questions like these on a daily basis.

Further, in translating a defendant's statements, the interpreter is not making a testimonial

statement—the interpreter simply repeats what he heard the defendant say.   *See United States v.*

*Koskerides*, 877 F.2d 1129, 1135 (2d Cir. 1989) ("The interpreter translated [defendant's]

statements concurrently as made.").[14]   The Supreme Court in *Crawford* emphasized that the

confrontation clause's "core concern" is with testimonial hearsay.   541 U.S. at 50–51; *see also*

*Ohio v. Clark*, 576 U.S. 237, 243 (2015) ("The Sixth Amendment . . . prohibits the introduction of

testimonial statements by a nontestifying witness . . . .").   "'Testimony,' in turn, is typically '[a]

solemn declaration or affirmation made for the purpose of establishing or proving some fact.'"

*Crawford*, 541 U.S. at 51 (alteration in original) (citation omitted).   In the instant case, the

defendant's translated statement is testimonial as to the defendant.   *See Clark*, 576 U.S. at 244

(statements are testimonial when "the primary purpose of the interrogation is to establish or prove

---

[13] Defendant contends that "[b]y relieving the government of its burden to produce the interpreter, . . . Defense counsel could not question the interpreter about possible word variations that could have significant legal implications."   [ECF 39] at 18.   Counsel does not further elaborate as to what the variations and corresponding implications might be in this case.   *See Da Silva*, 725 F.2d at 831 (finding evidence strongly supported the accuracy of translation and noting defendant "would likely have expressed confusion or distress if [translator's] Spanish had deviated materially from the patterns with which [defendant] was familiar"); *United States v. Soriano*, 2021 WL 2744644, at *4–5 (D. N. Mar. I. July 2, 2021) (that defendant had opportunity to modify statements to accurately reflect her intent but did not correct the statement she later challenged during trial indicated the translator's work was accurate).

[14] As the government observed in its brief, "[t]he interpreter's purpose is to translate accurately."   [ECF 40] at 12.

past events potentially relevant to later criminal prosecution" (citation omitted)).   But the Court

cannot find that the interpreter made a testimonial statement by simply relaying what someone else

said.[15]

Additionally, whether the government seeks admission of defendant's translated statement

for the truth of the matters asserted therein, or for some other purpose, a conviction in this case

would not be based solely on the defendant's translated statement.   For example, the government

offered testimony by CBP Officers Viera and Johannes, and the Court admitted into evidence

defendant's Colombian passport.   Such "external indica of reliability" also go the corroboration

factor under *Nazemian*.   *Santacruz*, 2010 WL 3491518, at *4.

The government may, however, have more work to do to persuade the Court that the

interpreter is a language conduit and not a declarant under the factors set forth in *Nazemian*.

While the government states that the interpreter is employed by Lionbridge, a contractor of the

government,[16] the government has provided no specific information about that company, other

than to describe it as "a large multinational company that likely has contracts with other

governmental or private entities throughout the world."   [ECF 40] at 12.   Nor has the government

provided any information bearing on the interpreter's qualifications and skill,[17] or whether the

---

[15] The Court agrees with the government on this point: "The interpreter did not assert a truth nor did the interpreter make statements with the purpose of establishing or proving some fact.   The interpreter repeated the statements of the defendant in another language."   [ECF 40] at 11.

[16] *See Romo-Chavez*, 681 F.3d at 959 (finding the first factor "weighs slightly in favor of [the defendant]" when the interpreter is supplied by or an employee of the government); *Afiang Ye*, 808 F.3d at 401 ("[t]his factor would have more weight if the translators were active in directing the interview"); *Soriano*, 2021 WL 2744644, at *4 (that government used on-demand telephonic interpreter weighed in favor of defendant, but ultimately finding this factor not dispositive where government did not hand-select the interpreter and defendant did not produce any evidence showing a prior relationship between the interpreter and government agents); *see also United States v. Karake*, 443 F. Supp. 2d 8, 92 (D.D.C. 2006) (where interpreters were not only provided by government but also members of the investigating team, this "create[d] bias issues that could undermine the integrity of their translations" and "their motives are certainly suspect").

[17] "Whether an individual speaks a foreign language with sufficient fluency to act as a translator in a given situation

*United States v. Saldana-Sanchez*
Criminal No. 2023-44
Page 9

interpreter might have motive to mislead or distort.[18]   The government instead points out that no

evidence of bias or motive was offered, and that Officer Viera testified that CBP regularly uses

and relies on Lionbridge's services.   *Id.*   In addition, the Court notes that defendant has not

challenged the accuracy of the translation, *Soriano*, nor was there any evidence adduced that

defendant was confused or distressed during the interview because of a lack of ability to understand

the interpreter's Spanish, *Da Silva*.   The Court will consider the parties' further arguments on

these factors at the resumed trial.

## IV.    CONCLUSION

In sum, the Court finds that the government's use of the defendant's translated statement

in this matter is not barred by the confrontation clause because the statement is not testimonial as

to the interpreter.   This Court will use the four factors set forth in *Nazemian* to determine whether

the defendant is fairly considered to be the declarant of his translated statement such that it is

properly admissible.

Accordingly, the premises considered, IT IS HEREBY ORDERED that the trial of this

matter will resume at **2:30 p.m. on December 19, 2023, in Courtroom 2**, before the undersigned.

DATED:   December 14, 2023                    S\ _____
                                                     **RUTH MILLER**
                                                     United States Magistrate Judge

---

is a question of fact."   *Romo-Chavez*, 681 F.3d at 960; *see United States v. Santacruz*, 480 F. App'x 441, 443 (9th Cir. 2012 ("experience may be the basis for establishing a translator's qualifications").

[18] *But see Santacruz*, 2010 WL 3491518, at *3 ("Conclusory allegations of bias are insufficient to prevent a finding that a translator was a language conduit.").